UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | No. 5:20-CR-00370-AKK-HNJ ) ) |
| PAUL DAIGLE, | ) ) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER

Before the court is Paul Daigle's motion to dismiss the indictment, doc. 32. Daigle argues that the United States has violated its discovery obligations and that the case cannot timely proceed to trial in accordance with the Speedy Trial Act, 18 U.S.C. § 3161 *et seq. Id.* at 1. He also asserts his Sixth Amendment right to a speedy trial. *See* doc. 35 at 13. Should the court decline to dismiss the indictment, Daigle seeks "sanctions and remedial measures" limiting the government's introduction of evidence and ordering the government to identify and produce certain materials. Doc. 32 at 3. The government has filed a response, doc. 34, to which Daigle has replied, doc. 35. As explained below, Daigle's motion is due to be denied.

**I.**

In November 2020, the government indicted Daigle, a corporate executive, for allegedly conspiring to defraud the government through false billing and

obtaining fake college degrees for unqualified employees. *See* docs. 1 at 1, 3, 7–8; 32 at 3–4. The indictment references contracts between the government and various companies, including Daigle's. *See, e.g.*, doc. 1 at 5. The issues in this case pertain to the content of the contracts and associated materials.

In early 2021, the government produced several phases of initial disclosures that amounted to over 6.4 million Bates-stamped pages. Doc. 32 at 5. Apparently, the volume of the disclosures, coupled with the government's BitLocker encryption of the files,[1] hindered the defense's ability to identify many key documents in a timely manner, if at all. *See id.* Moreover, the government purportedly failed to identify a number of "highly relevant documents" when it indicated other "hot documents" to the defense. *Id.* at 7. In particular, the defense claims that the government has not identified documents relating to several prime contracts and subcontracts at issue in the case. *Id.* at 7–8. The defense asserts that despite its good-faith efforts to organize and identify the production, in July 2021, it realized the "overwhelming" nature of the task and requested from the government an index of the items, a list of items the government intended to use in its case-in-chief, and a list of exculpatory evidence under *Brady* and *Giglio*. *Id.* at 8–9. The government

---

[1] For its part, the government contends that it produced the materials "in a load-ready, searchable format" protected only by a password that the government provided. Doc. 34 at 4.

2

produced an index but declined to provide the other materials. *See id.*; *see* doc. 34 at 5.

Thereafter, the parties conferred to discuss issues with the discovery. Doc. 32 at 10–12. The defense identified errors in the government's index and asked the government to identify "the operative contract documents," given that some materials "appeared to be a draft document that was later amended" and failed to indicate a final, executed agreement. *See id.* The government apparently agreed to give the defense the Bates numbers for the final contract and accompanying materials, but the Bates range it gave purportedly did not correspond to the correct materials. *See id.* at 10–11. The government also disclosed that it had failed to turn over approximately 4,500 relevant emails, had inadvertently produced about 100,000 irrelevant pages in its initial disclosures, and now believed that documents from at least two of the four devices identified on its index were irrelevant. *Id.* at 12–13. The government asked whether the defense wanted a new production or whether the government should supplement its disclosures and attempt to "claw back" the irrelevant documents; the defense answered that it preferred a new production with an updated index. *Id.* at 12.

The government apparently could not commit to a timeline for producing the replacement production but "believed it could take as long as January or February 2022." *Id.* at 14. On October 22, the government submitted a "revised index" with

"descriptions that were not contained in previous indexes, and in some instances, . . . different sources than listed before." Doc. 35 at 8. The defense acknowledges that this revised index "is mostly what the defense requested five months ago" but asserts that it "still has problems" because the index provides overly broad descriptions. *See id.* at 8–9. The court ordered the government to produce the 4,500 emails not previously produced to the defense by October 26, *see* doc. 34 at 6, a deadline the government apparently has met (as there are no filings to suggest otherwise). The court thereafter reset the trial for April 2022. Doc. 39.

## II.

Daigle contends that the government violated its discovery obligations under the court's discovery order, doc. 19; Rule 16 of the Federal Rules of Criminal Procedure; and *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny; and that the case "cannot be brought to trial within the time limits of the Speedy Trial Act" in light of these violations. *See* doc. 32 at 1. Daigle also asserts his Sixth Amendment right to a speedy trial. *See* doc. 35 at 13. In rebuttal, the government argues that it has met if not exceeded its discovery obligations and that there "is no reason for the trial to be delayed beyond April 2022, and if such a reason arises, a speedy trial issue will arise only after that point." *See* doc. 34 at 1–2. The court addresses the government's discovery obligations before turning to the speedy-trial issues.

A.

The court's discovery order directed the parties to provide initial disclosures by January 6, 2021 and reaffirmed the government's obligations under *Brady* and *Giglio*.[2] *See* doc. 19 at 1–3. In addition, Rule 16 of the Federal Rules of Criminal Procedure "spells out the materials the prosecution must produce on [Daigle's] request." *See United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir. 2003). Under Rule 16, the government must permit Daigle "to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof" that are within the government's "possession, custody or control" if the requested items are "material" to the defense's preparation, intended for use by the government in its case-in-chief at trial, or were obtained from or belong to Daigle. *See id.* at 1251; FED. R. CRIM P. 16(a)(1)(E).

The government asserts that it has "attempted to provide the maximum amount of discovery as early as possible, even where such disclosures exceeded what is required by law." Doc. 34 at 9. In support, the government claims that it provided the defense with the relevant "contract documents" the defense has repeatedly sought and that, due to the defense's inability to locate these documents,

---

[2] Under *Brady*, the government must turn over "evidence that is favorable to the accused," namely, material exculpatory evidence. *See United States v. Jordan*, 316 F.3d 1215, 1251–52 (11th Cir. 2003). And under *Giglio*, the government must turn over impeachment evidence "that is likely to cast doubt on the reliability of a witness whose testimony 'may well be determinative of guilt or innocence.'" *Id.* at 1253 (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

5

the government provided the Bates numbers for the "contract documents." *See id.* at 9–10. Though the defense asserts that this Bates range does not contain the operative agreement(s) it requires, *see* doc. 32 at 11, the government responds that the materials "*are* the 'contract documents'" and that it provided the defense "with all contract documents in its possession," doc. 34 at 10. "To the degree that there are issues with the produced contracts," including that they are unsigned, the government suggests the defense argue the documents deserve "minimal weight." *Id.* at 11.

The court agrees with the government that it has met its discovery obligations. Under the relevant rules and case law, the government need not provide more detailed explanations and indices to the defense. The court recognizes the defense's point that the government turned over a significant number of documents. Based on the volume, the defense argues that without sufficient roadmaps to guide its review, the production "hindered [the defense's] pretrial preparation." *See Jordan*, 316 F.3d at 1253; doc. 32 at 2. But this does not amount to a violation of the government's obligations under the court's discovery order, Rule 16, or *Brady* and *Giglio*. Rather, the voluminous discovery speaks to the complexity of the case and the effort required to mount an effective prosecution and defense.

To be sure, the defense has undoubtedly expended a significant amount of labor, resources, and time reviewing the government's production. However, the

6

law does not obligate the government to go beyond its discovery obligations to aid the defense through more detailed indices or reorganized production. And although the government recently determined that it failed to produce approximately 4,500 relevant emails, the court ordered the government to produce these emails by October 26, 2021, which was at least five months before trial and, in the court's assessment, more than sufficient time for the defense team to digest these documents. Further, the government represents that "copies of many, if not all, of the same emails were obtained from the defendant's company and *were* included in the government's prior productions." Doc. 34 at 6 (emphasis in original). *See also id.* at 6 n.5 (" . . . at least 2,500 [of the new emails] contain the exact same written content as documents that were already produced to the defendant.").[3]

Given the foregoing, the court cannot conclude that the government violated the relevant discovery rules or that the defense will be unable to adequately prepare for the April 2022 trial.[4] In the absence of discovery violations, the court will not

---

[3] The defense states that "the first time the government made [this] assertion" was in the government's response to the motion to dismiss the indictment. *See* doc. 35 at 6 n.20 (citing doc. 34). The defense thus asserts that it "has no way to verify whether those emails are in fact duplicated in the discovery." *Id.* Without further clarification or filings from the parties, the court assumes that the government complied with the court's order to produce the emails by October 26 and that the defense can now ascertain whether the government previously produced "many, if not all, of the same emails." *See* doc. 34 at 6.

[4] The defense also asserts that it will be unable to prepare for the April 2022 trial because the government "needs three or four months to produce an updated set of discovery documents" to turn over to the defense. Doc. 32 at 17. But this is only because the defense requested an entire reproduction as opposed to the government's proposed alternative: to supplement the existing production and "claw back" the irrelevant documents. *See id.* at 12. The court is mindful that the

7

impose measures on the government prohibiting it from introducing exhibits not labeled as "hot documents," requiring it to replace its production and provide a new, descriptive index, and instructing it to list its exhibits and witnesses and identify *Brady* material within the discovery.  After all, "[Rule 16] does not impose a duty on the [g]overnment to tip its hand prematurely by requiring it to give the defendant a roadmap of its strategy. . . . Although it requires an exchange of information, it does not open the door to discovery of strategy."  *United States v. Scrushy*, No. CR-03-BE-530-S, 2004 WL 483264, at *3 (N.D. Ala. Mar. 3, 2004).

B.

The court turns now to the potential speedy-trial issues.  While the motion has been pending, the court reset this case for trial in April 2022 in light of Daigle's motion to vacate the November 2021 trial setting, doc. 28.  Given that the government has not violated its discovery obligations and that the trial is now set for April 2022, the court disagrees with the defense that the trial "must be continued for months to accommodate the government's lack of diligent preparation," thereby resulting in Speedy Trial Act and Sixth Amendment violations.  *See* doc. 32 at 2.

---

defense ostensibly and perhaps justifiably chose the former option, when given the choice, because it would better aid the defense's discovery management.  However, the government is not obligated to reproduce the entirety of its discovery; that this inevitably will take or would have taken longer than supplementing the materials and clawing back the irrelevant documents does not necessarily amount to a violative delay.

1.

The Speedy Trial Act requires that a defendant's trial "commence within seventy days from the filing date . . . of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending," whichever is later.  *See* 18 U.S.C. § 3161(c)(1); *United States v. Harris*, 376 F.3d 1282, 1288 (11th Cir. 2004).  Excluded from the 70-day computation is "[a]ny period of delay resulting from a continuance granted by any judge" if the court finds that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).

In this case, Daigle first appeared before the court on December 9, 2020.  *See* Minute Entry on 12/09/2020.  Approximately three weeks later, the government filed an unopposed motion to continue the pretrial deadlines and trial and exclude any delay from the Speedy Trial Act calculation given the complexity of the case. *See* doc. 21.  The court granted this motion on January 4, 2021, when it determined that the ends of justice served by the continuance outweighed the speedy-trial interest in light of the complex and voluminous discovery the case entailed.  *See* doc. 22 at 1–2.  In April 2021, following a status conference in which the parties discussed potential trial dates, the court set the trial for November 8, 2021.  *See* Minute Entry on 04/06/2021; doc. 25.  Then, following Daigle's motion to vacate

the November trial setting, doc. 28, the court reset the trial for April 4, 2022, doc. 39. Because the Speedy Trial Act clock did not run for more than 70 days after Daigle's initial appearance before the court granted two ends-of-justice continuances,[5] the April 2022 trial date does not violate the Speedy Trial Act.

2.

The Sixth Amendment also guarantees defendants the right to a speedy trial. U.S. CONST., amend. VI; *Doggett v. United States*, 505 U.S. 647, 651 (1992). To determine whether a defendant's constitutional right to a speedy trial has been violated, the court looks to four factors: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy trial right; and (4) the prejudice to the defendant." *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006) (citing *Barker v. Wingo*, 407 U.S. 514 (1972)). "To trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Id.* (quoting *Doggett*, 505 U.S. at 651–52). Thus, only after the first factor is satisfied

---

[5] The court placed its findings regarding an ends-of-justice continuance on the record in January 2021, citing the need for counsel to adequately prepare for trial. *See* doc. 22 at 1–2. The defense moved to vacate the November 2021 trial setting for the same reason in September 2021. *See* doc. 28. The court permitted this continuance until April 2022, when the matter is now set for trial. *See* doc. 39. In sum, the parties sought and the court granted two continuances to afford the parties the preparation required to serve the ends of justice. Thus, on this record, no evidence supports a finding that the government has caused such a delay that the April 2022 trial must be pushed back in potential violation of the Speedy Trial Act.

10

may the court proceed to the final three factors.[6] *Id.* (citing *United States v. Clark*, 83 F.3d 1350, 1352 (11th Cir. 1996)); *Barker*, 407 U.S. at 530–31.  The Supreme Court has recognized that "the delay that can be tolerated for an ordinary street crime," for example, "is considerably less than for a serious, complex conspiracy charge."  *Barker*, 407 U.S. at 531.  And though the length of the delay necessary to trigger the speedy-trial analysis depends on the circumstances of each case, *see id.*, "[a] post-indictment delay exceeding one year is generally sufficient," *United States v. Oliva*, 909 F.3d 1292, 1298 (11th Cir. 2018).

In this case, the government indicted Daigle on November 17, 2020, *see* doc. 1, and the trial will begin on April 4, 2022, *see* doc. 39.  Thus, the "relevant delay"— *i.e.*, "the time between the date of the indictment and the trial date"—constitutes approximately 17 months.  *See Ingram*, 446 F.3d at 1337 n.3. While this clearly exceeds one year, the court also recognizes that (1) Daigle did not oppose the government's initial motion to continue, doc. 21, which stated, soon after the indictment was filed, that the parties would need additional time to sift through complex discovery; and (2) Daigle subsequently moved to vacate the November 2021 trial setting in order to "sort through the large volume of discovery" and work with the government "on possible ways to expedite discovery review," doc. 28.  Due

---

[6] Additionally, if the first three *Barker* factors weigh heavily against the government, the defendant need not show actual prejudice (the fourth factor).  *See Ingram*, 446 F.3d at 1336.

11

to these discovery issues, the court reset the trial for April 2022.  Doc. 39.  Although the defense asserts that Daigle's request to vacate the November 2021 trial order "was a direct result of problems with the discovery productions," the 17-month delay in this case is not resoundingly "presumptively prejudicial" to Daigle in light of his assent to the continuances and the complexity of the charges.  Doc. 35 at 14 n.37.

Regardless, the court assumes for this analysis that the 17-month delay is presumptively prejudicial because it exceeds one year.  Moving to the remaining *Barker* factors, however, Daigle has not established a Sixth Amendment violation.  For one, there is no evidence that the government deliberately attempted to delay the trial, and it appears from the motions to continue that both the government and the defense have recognized the need for delays in order to parse the lengthy production.  *See United States v. Machado*, 886 F.3d 1070, 1079–80 (11th Cir. 2018) (weighing the "relative culpability of the government and the defendant for the delay" and noting that deliberate attempts to delay the trial should be weighted heavily against the government).  In addition, Daigle did not assert his speedy-trial right prior to filing the motion to dismiss, *see* doc. 32, did not oppose the initial continuance sought by the government in December 2020, *see* doc. 21, and moved to vacate the November 2021 trial setting in September 2021, *see* doc. 28.  Therefore, the first three *Barker* factors do not weigh heavily against the government.

As to the "prejudice" prong, the defense asserts that regardless of its receipt of the 4,500 previously undisclosed emails, it will "still be left with a document dump, and no meaningful way to review it." Doc. 35 at 15. True, the possibility of impairment to the accused's defense through "dimming memories and loss of exculpatory evidence" may prejudice the defendant. *Doggett*, 505 U.S. at 654 (citing *Barker*, 407 U.S. at 532). But here, there is no showing of "dimming memories" or the potential loss of exculpatory evidence. Rather, the 17-month period between the indictment and the April 2022 trial setting arose from the complex charges and voluminous discovery in this case. Again, the court acknowledges the labor-intensive nature of this discovery process. However, at this time, the defense ostensibly possesses the 4,500 documents and an updated index, *see* doc. 35 at 7–8, 15, and the delay between the indictment and the trial ultimately does not violate the Sixth Amendment.

## III.

In sum, the government has not violated its discovery obligations, and the April 2022 trial setting does not violate the Speedy Trial Act or Daigle's constitutional right to a speedy trial. Accordingly, Daigle's motion to dismiss the indictment or, in the alternative, impose remedial measures, doc. 32, is **DENIED**. This case will proceed to trial on April 4, 2022. *See* doc. 39.

**DONE** the 3rd day of December, 2021.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE